Thank you. May it please the court. My name is Jordan Kushner and I represent the appellant Robert Lee Bailey in the never-ending saga of his missing property. And Mr. Bailey thought that it was all, that it was finally set and maybe the government did too. He must have thought you were a good lawyer, but all of a sudden it looked like he was I think he might still have some faith in me, but yeah, he didn't get his money. He signed a specific, an agreement that specifically said that the check, that the United States Treasury is going to issue a check to Robert Bailey. It didn't just say that he would pay Mr. Bailey. The agreement didn't say that it would pay Mr. Bailey subject to any administrative offsets, but it said that it was going to issue a check for a specific amount, which he didn't get. And I remember Mr., after about eight weeks, I started to contact Mr. Wilhelm who had told me originally, I think that it would be six weeks. I said, where's the money? He said, he didn't know. And he started checking on it and then found that the money had been And so this wasn't, was not an appropriate disposition of the funds in this, in this case, because number one, the government had a specific agreement with Mr. Bailey. So if they weren't able to perform on the agreement, which consisted of giving him a check, then at the minimum, they had to come back and say that we need to get out of the settlement agreement because we can't perform according to our obligation. Is the government like a Hydra that's got a lot of different heads that are equal or what? Well, the, I mean, that's an interesting question, but the United States government, I think, has to be regarded as one unit. We can't, I don't see how it, how we can deal consistently with the United States government if they can say, well, we're not bound by something that we've agreed to because some other part of us would want it differently. I think an agreement is an agreement, and there's obviously, there's a lot of expertise within the Department of Justice, and they pay out settlements. And so if they had some issue where they didn't want to, where they might not have to pay the settlement because of some statute that says that money is supposed to be redirected if it's owed, that's something that was incumbent on them to anticipate and say, okay, we'll agree to pay you $2,500, but we're not going to agree to pay, to commit to paying you a check for $2,500. It'll be assuming that you don't owe any kind of judgment of some sort someplace else, or they could have checked on that ahead of time. But because they made that specific agreement with him, they're bound by that, they need to be bound by that agreement just like anyone else, and that's what the case law says, is that a contract with the United States government is interpreted the same way as a contract between any parties. They're bound by the- There's no dispute that he owed the child support, is there? We're not, I don't think there's a dispute. That's not really an issue, is it? No. So isn't it kind of a strange, isn't this kind of a strange argument that he now owes less of the child support debt? He owes $2,500 less. So isn't it just as a matter of kind of equity and kind of common sense sort of analysis, isn't he just in the same position that he would be had the government issued the check to him? I think there's equitable arguments, but in reality it's not the same because Mr. Bailey would have immediate use for that $2,500. He was about to get out of prison, trying to start over from scratch after being in prison for 10 years, and he had immediate use for that $2,500. That $2,500 was a lot more valuable to him at the time that he made the agreement than it might have been a few years down the road. And so it would make a big difference to have that $2,500 at a specific time, as opposed to paying off that child support over a period of time, taking X amount of money out of his paychecks. As here in the money, that $2,500 could go to pay his security deposit, pay his first month's rent while he got on his feet. So when someone makes it, and of course that happens all the time, people borrow money and they ask for cash up front. They make arrangements where they're getting cash right away because if they're making an agreement to get cash at a specific time, it might make a big difference to have cash at that time. Whereas most people, at the same time, most people in society do have debts of some sort that they expect to be able to pay over a period of time and not have to pay right away. Otherwise, the regular person wouldn't be able to survive if they had to pay all money that came into them to pay back their debts immediately. And so that's a situation that he had a right to depend on that he was going to get that money. What about the equities involved in the fiasco in the first place about the money getting lost? We talked about that earlier and it looked like it was most likely the Minneapolis police and not the federal government, but I suppose are the Minneapolis police then acting like the agent of the federal government when they lose it? Yeah, I mean that's an interesting question that, you know, after the last appeal we were given leave basically to go ahead and amend the motion into a civil complaint against the Minneapolis police department or the federal agents involved. And I guess those issues probably would have been sorted out through litigation that would have proceeded, but the federal government decided that it was in their best interest to just make its agreement with Mr. Bailey, pay him the $2,500 and be done with it. And so I think that's another, so I think that's a really important point that that's another equity in this situation is that Mr. Bailey was expecting that he was going to get this money from the federal government in return for giving them a big benefit of not having to continue to deal with this fiasco. And instead of paying him the money, they acted contrary to the agreement and said, well, you owe this money to child support and so we're going to, we're going to, you're not going to get it. It's going to be redirected. So who, if you win here, who has to pay the money? Do they try to get it back from the state? No, they have to just pay it, right? You're talking about who's going to pay the, it was going to, the agreement provided that the check would come from the United States treasury. So whether they were going to get it back from the police department or not, I don't know. That's beyond my, uh, that was beyond our realm, obviously. You're not going to be able to get it back from Illinois, presumably. Uh, no, no, there's no way to get it back from Illinois. They're, they're old money. And I think that it was a situation where Mr. Bailey would have needed to work it out with the, with the state of Illinois and just for the magistrate had mentioned, well, he's helping to support his children, but the reality is his children are all grown up. And so this is past money that the state of Illinois had paid out that they were seeking to get back. Um, so that's, uh, I think that covered the other, I think the other issue has to do with whether the statutory authority is really there under the circumstances to deduct the money here. And, uh, you know, they did provide case law from a case in California that seized property doesn't count as money that's subject to administrative offset. And I think that's an interesting, uh, point to deal with as well, even though the money came out of the government funds, it was, it was paying him back for seized property money that the government took that it didn't have a right to. And so I think there's also an argument here, important point that it, that this shouldn't be subject to the same kind of constraints that just in exchange of a regular exchange of funds would be involved with. And I, so I reserve the rest of my time for rebuttal. Thank you. Thank you. May it please the court, counsel. I'm D Gerald Wilhelm. I'm an assistant United States attorney here representing the United States in this matter. Uh, judge Murphy, to your point about the multi hire, the hydra headed government. I think that's important to recognize that there is a division of power in our constitution. I agreed on behalf of the executive branch to pay certain money. Congress, on the other hand, on the part of the legislative branches, enacted a law that says, if you pay money, it needs to go through the treasury offset program. Mr. Jordan or Kushner rather argues that I can agree that away, that somehow signing a paper that says I agree to pay a check to you somehow can agree away Congress's mandate that this money be offset against a debt. I can no longer, no one can agree that away. I could no more agree away Congress's mandate than I could agree away the internal revenue code. If I was to stand here and say, well, we've agreed that Mr. Bailey won't have to pay taxes on this. If it is indeed a taxable event, I, no one would argue that I could do that. It's simply not in the, it's simply not in the cards. And similarly here, Congress says thou shalt offset. Congress says the secretary of the treasury can exercise his discretion to pass some rules to apply this to state debts. The secretary has done that. He's exercised his discretion. And under those circumstances, there is no choice. I think really what Mr. Kushner is arguing here is sort of an underlying, a subtext fairness argument. It's sort of a overarching due process. Look at how the I have to pay child support. It just isn't fair. I think that's really the overarching argument here. And the point is it is fair. He's had all the opportunity to exercise his due process that the law should afford him. He was, the record below demonstrates that he was notified on at least two occasions that he owed the money and he needed to do something about it. I refer specifically to the record below. Exhibit C is a notice by the state of Illinois to him while he was in prison, which he agrees he received, saying you owe this money. We're going to offset any payments that you have against your debt. Later on, the United States government gave him the same notice again. Exhibit B, which is in Mr. Kushner's addendum. We're going to offset against any payments. He was told that this was going to happen. The notices themselves, which I'm holding in my hand here, set forth a means by which he can appeal, by which he can challenge, by which he can contest. He didn't choose to avail himself of any of those things. Rather now, he's asking this court to go around all that, to go around Congress and to order the government to pay him without regard to a congressional mandate. So the subtext of fairness here is really not sustainable. Mr. Bailey's had all the due process that he deserves and more. And the case law cited in my brief, both in this court and below, supports that. Notice is all that's required, an opportunity to be heard. And this court in Stewart, cited in my brief, said mailing a notice to a person that they're going to have this debt offset unless they pay it is sufficient due process. Mr. Bailey had that and more. Now, he argues here as a secondary matter that the Debt Collection Improvement Act shouldn't apply. Fundamentally, Astru versus Ratliff settles that. It's a United States Supreme Court case, started in this circuit but ended up in the Supreme Court. And it basically says it applies to every payment. Payment means payment unless it's accepted. And this payment is not accepted. The distinction here that Mr. Kushner makes between seized property and other property is a distinction, in my view, without a difference. The case that he cites here in support of his proposition is in re-seized property, which is a 2011 case, fundamentally dealing with property that was taken by the DEA and later there was either no charges or for some reason it was going to be returned. And that property, the physical property itself had not been converted except, you know, the only way they could convert it was to put it into the bank account. They weren't going to use it for And the judge there said, no, that's not a payment, that's a return of property. This is a little different. This is a cause of action. Here the property was actually lost or stolen. We don't know which. Record below doesn't say. And it's not clear. But for some reason that money disappeared. That creates a cause of action for negligence or for conversion or for some than simply handing back the money that you took. It is a cause of action. We have settled that cause of action and agreed to make a federal payment. That's subject to the law. And I think that reasoning is adopted in large part by the case that I cited in my brief, which criticizes in re-seized property, and that is U.S. versus $3,174. That's a case, again, in the Eastern District of Wisconsin, a 2013 case. But that case, I think, criticizing in re-seized property adopts the better reasoning that the distinction between seized property and other property is a distinction without a difference. A federal payment is a federal payment. And I'm going to sit down in just a moment, but I think I need to comment on Judge Shepard's comment that Mr. Bailey was not hurt here. He had a debt reduced. If he didn't pay it today, he was going to have to pay it tomorrow out of some other resource. He simply was not injured. Moreover, what's going to happen if he gets his relief here? If he gets his relief here, it will be fruitless. Because what he's asking for is to get out of his settlement agreement and re-litigate against the United States for some sum of money. That's specifically what he's asked to do. If that happens and we settle the case, or if he prevails in a lawsuit against the United States, what do we have? Another federal payment, which is again subject to Treasury offset. So it is sort of a circle. Any relief that this court can give still will be subject to the congressional mandate of offset. So, unless the court has further questions, that concludes my remarks. Thank you. The underlying cause here ultimately is not due process. It's primarily contract and the government's obligation to enforce a contract. And so if Mr. Wilhelm says that he doesn't have any discretion that Congress ordered, required him to pay the money to child support, that's not what the statute that Judge Montgomery ultimately relied on, 31 U.S.C. 3711, doesn't say that it's required. It says that the secretary may use the money to pay a state debt. It's actually a discretionary statute. It uses the word may. And it actually says the secretary may, in its discretion, the secretary may, in the discretion of the secretary, apply subsection A with respect to any past due legally enforceably debt owed to a state. So the government did have discretion not to enforce this debt owed to the state. And if it didn't have any discretion, then the government shouldn't have entered into the agreement in the first place to enter an agreement that they didn't have any discretion to. So the choices are either one, to order the lead to Mr. Bailey, which is what the agreement requires. And if for some reason the government, the court, or decide the government can't do that, then the next step would be to get out of, allow Mr. Bailey to get out of the settlement agreement because the government didn't fulfill the terms of the settlement agreement. And what happens after that, I guess, would be an interesting process. Yes, it would be. Well, talking about interesting processes now, if a, if you are on the winning side here and do we have to then send this back to the district court to flesh out all of the facts that really need to be put together so that it can come back up here so he says, aha, we have the 10 commandments now in our hand and now we can do something or what's your take on that? Our preference would be that the, if you're just told that the government has to specifically perform the agreement, which would mean to provide the $2,500 check payable to Mr. Bailey as required into the contract and then no more work would be done. But if the court were to determine that it wouldn't do that, then the, then the next step would be to reinstate, you know, vacate the settlement agreement and then Mr. Bailey would again be able to convert his, his motion into a lawsuit, which would probably raise, raise more statute of limitations problems at this point. So I don't know if it would be workable. So there might have to be some other remedies. So I think it does, that does present complicated questions as to what the appropriate remedy would be and how to enact it short of just ordering the government to give Mr. Bailey his check. Thank you both. Thanks.